UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-110 (ESH) |
| v. | : | |
| RICKY COBLE | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**I.    BACKGROUND**

The defendant was charged in a one-count information with Escape, in violation of 18 U.S.C. §§ 751 and 4082(a). This information originated in the United States District Court for the District of New Jersey. On April 27, 2006, a Consent to Transfer Case for Plea and Sentence under Rule 20 of the Federal Rules of Criminal Procedure was entered. On May 1, 2006, the defendant pled guilty to this offense before Magistrate Judge Alan Kay. At that time the defendant admitted to the following:

On June 15, 2005, the defendant was placed on furlough status for his change in custody from the Federal Correctional Institution Fairton (FCI) in New Jersey to Bannum Community Corrections Center (CCC), a halfway house located at 2210 Adams Place, NE, in Washington, DC. On June 15, 2005, the defendant left FCI at approximately 9:55 a.m. He was to arrive at CCC no later than 5:15 p.m. on the same day. The defendant failed to report to CCC. On June 16, 2005, the Bureau of Prisons issued an Escaped Federal Prisoner Notice for the Defendant. On June 20, 2005, a Magistrate Judge for the United States District Court for the District of New

1

Jersey issued an arrest warrant for the defendant.

On July 11, 2005, members of the District of Columbia Capital Area Regional Task Force arrested the defendant as he tried to flee from his girlfriend's residence at 718 Uland Street, NE, in Washington, DC.

## II.    SENTENCING CALCULATION

### A    Statutory Maximum

Pursuant to 18 United States Code § 751 and § 4082(a), the offense carries a maximum sentence of 5 years imprisonment, a $250,000 fine and up to three years of supervised release.

### B.    Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Report ("PSR") calculates the defendant's total offense level at 7.  See PSR ¶ 22.  The PSR calculates the defendant's criminal history as Category VI.  See PSR ¶ 38.  Therefore, the PSR calculates the guideline range for the defendant at 15 to 21 months.  See PSR ¶ 73.

## III.    GOVERNMENT'S RECOMMENDATIONS

### A.    Application of the Federal Guidelines post-Booker

It is the government's position that the Court should impose a sentence at the high end of the guidelines range.  In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1).  Booker, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety.  To the contrary, the Court upheld

the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 769.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The

Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information

about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See Booker, 125 S. Ct. at 764. Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C.

Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable. <u>Booker</u> not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, <u>Booker</u> also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. <u>See</u> 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

  Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. This is so, said the court in <u>United States v. Wilson</u>, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after <u>Booker</u> was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress. The resulting Guidelines, <u>Wilson</u> held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge

Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." Id. at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range calculated in the Presentence Report.

B.  Basis for Government's Sentencing Recommendation

The government is requesting a sentence of 21 months, which represents a sentence at the high end of the defendant's applicable guidelines range. The defendant's criminal history spans twenty-four years, and includes convictions for robbery, carrying a dangerous weapon, attempted burglary, and distribution of heroin. Perhaps more disturbing though, is the fact that this is not the defendant's first escape conviction. In 1992, the defendant was convicted of prison breach in case 1992-FEL-4118, and in 2001 the defendant was convicted of Escape in case 2001-FEL-6260. Furthermore, the facts of case 2001-FEL-6260 are remarkably similar to the one for which the defendant now stands before this Court. In that case the defendant walked away from another halfway house in Washington D.C.

The defendant also has consistently performed poorly while on probation and supervised release. In 1989 the defendant's probation was revoked in case 1983-FEL-6048. In 2004, the

defendant's term of supervised release was revoked in case 2001-FEL-2277, and also in case 2001-FEL-6260.  In those cases the defendant's violations ranged from failed drug tests, missed supervisory appointments, missed drug tests, and new arrests.  According to one supervision officer, "[d]espite imposing sanctions, Mr. Coble's adjustment to supervision has been marginal at best."  See PSR ¶ 32.  Another supervision officer stated that "the defendant is seen as a threat to the community."  See PSR ¶ 33.  The defendant's most recent supervision officer noted that the defendant "has a total disregard for his conditions of probation."  See PSR ¶ 34.  These statements are supported by the fact that the defendant was on supervised release in two cases when he committed the instant offense.

## IV.    CONCLUSION

The defendant has consistently displayed a flagrant disregard for the law, the courts, and any form of supervision.  As such, the government respectfully requests that the Court sentence the defendant to 21 months of incarceration.

                    Respectfully submitted,

                    KENNETH L. WAINSTEIN
                    United States Attorney
                    Bar No. 451058

                    _____
                    Catherine K. Connelly
                    Assistant United States Attorney
                    Major Crimes Section, Mass.  Bar No. 649430
                    555 4th Street, N.W.  #4844
                    Washington, DC 20001
                    Phone: 616-3384
                    Fax: 353-9414

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Dani Jahn, this 24th day of July, 2006.

_____
Catherine Connelly
Assistant United States Attorney